UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DIANA M. MARKHAM,

           Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

           Defendant.

CASE NO.    C07-5702RBL-KLS

REPORT AND
RECOMMENDATION

Noted for December 5, 2008

    Plaintiff, Diana M. Markham, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

    Plaintiff currently is 47 years old.[1] Tr. 54. She has a high school education and past work experience as a short-order cook, horticultural technician and bus driver. Tr. 34, 104, 398.

    On November 21, 2003, plaintiff filed applications for disability insurance and SSI benefits,

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

alleging disability as of March 31, 2003, due to depression, hepatitis C, a hypothyroid condition, and possible attention deficit disorder. Tr. 24, 76-78, 103. Her applications were denied initially and on reconsideration. Tr. 54, 56, 58, 65. A hearing was held before an administrative law judge ("ALJ") on May 12, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 394-429. A supplemental hearing, at which plaintiff, represented by counsel, again appeared and testified, was held on October 11, 2006. Tr. 430-44

On February 12, 2007, the ALJ issued a decision, determining plaintiff to be disabled from March 31, 2003, through August 15, 2006, finding specifically in relevant part:

(1)      at step one of the five-step sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since March 31, 2003;

(2)      at step two, from March 31, 2003, through August 15, 2006, plaintiff had "severe" impairments consisting of hypothyroidism/obesity and an "affective (depression) disorder"; and

(3)      at step three, from March 31, 2003, through August 15, 2006, the severity of plaintiff's affective (depression) disorder met the criteria of, and therefore she was disabled under, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(A)(1) and (B) ("Listing 12.04");

Tr. 24-31, 35. The ALJ also determined that as of August 16, 2006, plaintiff was no longer disabled, finding specifically in relevant part:

(1)      at step one of the eight-step continuing disability review process with respect to plaintiff's disability insurance benefits,[3] plaintiff had not engaged in substantial

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[3]The Commissioner follows a process involving eight "specific steps in reviewing the question of whether" the disability of a recipient of disability insurance benefits continues:

(1)      At step one, is the recipient "engaging in substantial gainful activity"? If so, the recipient's disability will be found to have ceased.

(2)      At step two, if the recipient is not engaging in substantial gainful activity, does he or she "have an impairment or combination of impairments which meets or equals the severity of an impairment listed in" 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the recipient's disability will be found to continue.

(3)      At step three, has there been "medical improvement as shown by a decrease in medical severity"? If so, the review proceeds on to step four. If not, the review proceeds on to step five.

(4)      At step four, is the medical improvement related to an increase in the recipient's "residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination"? If not, the review proceeds on to step five. If so, the review proceeds on to step six.

gainful activity since March 31, 2003;

(2)    at step two (step one of the continuing disability review process with respect to plaintiff's SSI benefits),[4] beginning on August 16, 2006, none of plaintiff's impairments met or equaled any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(3)    at step three (step two for plaintiff's SSI benefits), medical improvement had occurred because plaintiff no longer had an impairment or combination of impairments that met or equaled any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)    at step four (step three for plaintiff's SSI benefits), beginning on August 16, 2006, plaintiff had the residual functional capacity to perform the full range of work at the light exertional level;

(5)    at step six (step five for plaintiff's SSI benefits), beginning on August 16, 2006, plaintiff had a "severe" impairment consisting of hypothyroidism/obesity; and

(6)    at step seven (step six for plaintiff's SSI benefits), beginning on August 16, 2006, plaintiff was capable of performing her past relevant work as a short-order cook.

Tr. 28-35. Plaintiff's request for review was denied by the Appeals Council on October 26, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 7; 20 C.F.R.§ 404.981, § 416.1481.

On December 21, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's

---

(5)    At step five, if there has been no medical improvement or if such improvement is not related to an increase in the recipient's residual functional capacity, do any of the exceptions to medical improvement in 20 C.F.R. § 404.1594(d) and (e) apply? If no such exception applies, the recipient's disability will be found to continue. If an exception in 20 C.F.R. § 404.1594(d) applies, the review proceeds on to step six. If an exception in 20 C.F.R. § 404.1594(e) applies, the recipient's disability will be found to have ceased.

(6)    At step six, if medical improvement is related to the recipient's residual functional capacity or if one of the exceptions in 20 C.F.R. § 404.1594(d) applies, are all of the recipient's "current impairments in combination" severe? If the residual functional capacity assessment conducted at step four "shows significant limitation" in the recipient's "ability to do basic work activities," the review proceeds on to step seven. If there is no significant limitation, the recipient's impairments "will not be considered to be severe in nature," and the recipient "will no longer be considered to be disabled."

(7)    At step seven, if the recipient's impairment is severe, is the recipient able to engage in substantial gainful activity, and – based on the recipient's residual functional capacity – is the recipient able to perform the work he or she did in the past? If so, disability will be found to have ceased.

(8)    At step eight, if the recipient is unable to do the work he or she did in the past, is the recipient able to do other work in light of his or her residual functional capacity, age, education and past work experience? If so, disability will be found to have ceased. If not, disability will be found to continue.

20 C.F.R. § 404.1594(f).

[4]The continuing disability review process is essentially the same for recipients of SSI benefits, except that it is a seven step process, the first step of which corresponds to step 2 of the continuing disability review process for recipients of disability insurance benefits and continues accordingly. See 20 C.F.R. § 416.994(b)(5).

decision. (Dkt. #1). The administrative record was filed with the Court on March 19, 2008. (Dkt. #9). Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings:

(a) the ALJ failed to give appropriate weight to the opinions of Jeff Bremer, Ph.D., and Marne Nelson, A.R.N.P.;

(b) the ALJ erred in finding plaintiff's depression did not continue to be a severe impairment for the period beginning on August 16, 2006;

(c) the ALJ erred in finding plaintiff's mental impairments did not continue to meet or equal the criteria of Listing 12.04 for the period beginning on August 16, 2006;

(d) the ALJ erred in finding plaintiff to be not credible for the period beginning on August 16, 2006;

(e) the ALJ erred in assessing plaintiff's residual functional capacity for the period beginning on August 16, 2006;

(f) the ALJ erred in finding plaintiff to be capable of returning to her past relevant work for the period beginning on August 16, 2006; and

(g) the Commissioner failed to meet his burden of establishing that plaintiff was capable of performing other work existing in significant numbers in the national economy for the period beginning on August 16, 2006.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. <u>Allen v. Heckler</u>, 749

F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Analysis of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,

1195 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.     The ALJ Erred in Evaluating the Opinion of Dr. Bremer

On September 26, 2006, plaintiff underwent a psychological evaluation conducted by Jeff Bremer, Ph.D., who diagnosed her with dysthymia, polysubstance dependence in reported remission, a personality disorder with provisional borderline personality features, and a global assessment of functioning ("GAF") score of 65, both currently and the highest in the past year. Tr. 381-82. On mental status examination, plaintiff's motor skills and sensory and perceptual functioning appeared normal, and she was alert, oriented and responsive. Tr. 381. However, she was "tense and apprehensive," she was "decidedly dysphoric" and she cried frequently. <u>Id.</u> Dr. Bremer further commented in relevant part as follows:

> Ms. Markham readily understood and followed simple, detailed, and complex instructions. She expressed herself clearly and concisely. There was no evidence of impaired reality testing or judgment. She was not visually hallucinating or reporting or apparently experiencing unusual perceptual experiences while we met. . .
>
> . . .
>
> Ms. Markham presents as a chronically mildly depressed woman stable in recovery from drug abuse, and apparently successfully raising her daughters and maintaining a household as a single parent. . . .

Tr. 381-82. In a medical source statement of ability to do work-related mental activities completed at the same time, Dr. Bremer also found plaintiff to be moderately limited in her ability to interact appropriately with co-workers, supervisors and the public, and markedly limited in her ability to respond appropriately to work pressures in a usual work setting. Tr. 384.

The ALJ found that the "objective evidence" supported Dr. Bremer's opinion that plaintiff was able to "function at least satisfactorily secondary to her mental impairment as noted in all categories with the exception of work pressures," but that such evidence did "not support marked limitations" in her ability to respond appropriately to work pressures. Tr. 32. Plaintiff argues the ALJ erred here by failing to mention Dr. Bremer's description of her tearfulness, tension, apprehension, tiredness and sleep disturbance, which she asserts provides ample evidentiary support for the marked limitation in responding to work pressures

found by Dr. Bremer.

The undersigned agrees the ALJ erred here, but not for the reasons asserted by plaintiff. It is true that Dr. Bremer noted plaintiff was tense and apprehensive and cried frequently during the mental status examination. There is no indication in Dr. Bremer's evaluation report, however, that he found plaintiff to be markedly limited in her ability to respond to work pressures based on any of these observed symptoms. Indeed, it is not even clear to what extent, if any, Dr. Bremer believed those specific symptoms related to plaintiff's ability to function in a work setting. The same is true with respect to the symptoms of tiredness and sleep disturbance. In fact, these latter symptoms were not observed by Dr. Bremer himself, but merely reported by plaintiff as ones she had experienced. In other words, while it is possible the above symptoms could have contributed to Dr. Bremer's opinion, it is not at all clear that they did.

On the other hand, the undersigned finds the ALJ improperly discounted Dr. Bremer's opinion that plaintiff had a marked limitation in her ability to respond appropriately to work pressures. First, it is not clear what objective evidence the ALJ was referring to when he found that it did not support Dr. Bremer's opinion here. Presumably the ALJ was referring to the findings contained in the evaluation report itself that Dr. Bremer completed. Contrary to plaintiff's assertions, that report does not appear to contain much in the way of objective medical findings indicative of marked limitations in social functioning. That being said, there also does not appear to be much in the way of objective evidence to support the other moderate limitations in social functioning found by Dr. Bremer, and which the ALJ adopted. However, the ALJ did not explain why the evidence supported these limitations, but not the former. Accordingly, on remand, the Commissioner should re-consider Dr. Bremer's opinion and findings.

B.     The ALJ Properly Evaluated the Opinion of Ms. Nelson

On June 14, 2006, Marne Nelson, A.R. N.P., conducted a psychiatric evaluation of plaintiff. At the time of that evaluation, plaintiff reported that her mood was "currently stable," that while she had "some ongoing depression," it was better than it had been in the past, and that presently, she was "feeling less depressed and irritable." Tr. 365. On mental status examination, plaintiff's mood was "mildly depressed" and her affect ranged "from fairly cheerful to irritable." Tr. 368. Her short and long term memory seemed to be grossly intact, her thoughts were clear, organized and "free of delusional material," and she exercised reasonable judgment. Tr. 368-69.

Ms. Nelson diagnosed plaintiff with a recurrent mild major depressive disorder, a posttraumatic

stress disorder, polysubstance dependence in sustained full remission, and a current GAF score of 55-60. Tr. 369. Ms. Nelson stated that plaintiff was between major depressive episodes currently, and therefore her depression was "not completely resolved." Id. She also felt plaintiff might have dysthymia as well. Id. However, Ms. Nelson noted that plaintiff seemed "motivated to get well," and it appeared that medication had "been of some benefit" to her. Id.

In a progress note dated July 13, 2006, Ms. Nelson commented that plaintiff came "across initially as euthymic," and then became tearful. Tr. 378. "[S]ome irritability" was noted, however, with plaintiff reporting that "she was feeling pretty good this last month until yesterday." Id. Ms. Nelson further noted that while plaintiff had been given another medication to take, she had not yet started or really committed to taking it, and was unable to explain why she had not done, or could not do, so, even though she was informed that it was chosen "to further help her mood and address her anxiety." Id. Ms. Nelson diagnosed plaintiff with irritability and ongoing depression and anxiety. Id.

Ms. Nelson stated in an August 16, 2006 progress note that plaintiff's presentation was "remarkable for dramatically decreased irritability," and that "[i]n fact, there was no irritability noted today." Tr. 376. Plaintiff came across "as euthymic" and "not defensive" like she had been "at other visits," and she seemed calm and pleasant. Id. Ms. Nelson further commented in relevant part as follows:

> She denies having significant problems with anxiety recently and denied that she has had problems with that since she has been seeing me. However, this is at odds with how she described how she was doing, and I am not sure what to make of this. She denies flashbacks or panic attacks.
>
> She does not have any physical complaints of anxiety. She thinks she still has some irritability, but she seemed much less irritable during the appointment today.
>
> . . .
>
> The client denies improvement, but this is at odds with her presentation. . . .

Tr. 377.

Plaintiff argues the ALJ erred in rejecting without any explanation the description Ms. Nelson gave of her tiredness, lethargy and sleep disturbance on August 16, 2006. Plaintiff asserts this is significant probative evidence the ALJ was required to consider and give valid reasons for rejecting. The undersigned disagrees. First, Ms. Nelson merely reported that plaintiff complained she was tired and lethargic and had interrupted sleep. Tr. 376. Ms. Nelson did not actually find plaintiff exhibited those symptoms, and did

not attribute any work-related limitations to them.  Further, while plaintiff denied experiencing improvement at that time, Ms. Nelson expressly stated this was "at odds with her presentation." Tr. 377. The undersigned therefore finds any error committed by the ALJ here to be harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error deemed harmless if inconsequential to ALJ's ultimate non-disability determination).

II.      The ALJ Erred in Finding Plaintiff's Depression to Be Not Severe

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." Id.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a de minimis screening device used to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

As noted above, the ALJ found plaintiff's affective (depression) disorder to be severe from March 31, 2003, through August 16, 2006, but not thereafter.  Plaintiff argues the ALJ erred in failing to find it continued to be a severe impairment beyond that date.  The undersigned agrees.  Also as noted above, on September 26, 2006, Dr. Bremer diagnosed plaintiff with dysthymia.  Although Dr. Bremer did describe plaintiff as presenting "as a chronically mildly depressed woman" in his evaluation report, he found her to be moderately limited in her ability to interact appropriately with co-workers, supervisors and the public, and markedly limited in her ability to respond appropriately to work pressures in a usual work setting.  As discussed above, the ALJ erred in rejecting the latter marked limitation, and he appeared to adopt the other moderate social functioning limitations.  Each of these limitations likely would have more than a minimal

1    impact on plaintiff's ability to work.  Accordingly, the ALJ erred here.

2    III.      The ALJ Conducted a Proper Step Three Analysis

3          At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's

4    impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P,

5    Appendix 1. 20 C.F.R § 404.1520(d), § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

6    If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. Id.

7    The burden of proof is on the claimant to establish that he or she meets or equals any of the impairments in

8    20 C.F. R. Part 404, Subpart P, Appendix 1. Tacket, 180 F.3d at 1098.  However, "[a] generalized

9    assertion of functional problems is not enough to establish disability at step three." Id. at 1100 (citing 20

10   C.F.R. § 404.1526).

11         A mental or physical impairment "must result from anatomical, physiological, or psychological

12   abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."

13   20 C.F.R. § 404.1508, § 416.908.  It must be established by medical evidence "consisting of signs,

14   symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is

15   conducted at step three must be made on basis of medical factors alone).  An impairment meets a listed

16   impairment "only when it manifests the specific findings described in the set of medical criteria for that

17   listed impairment." SSR 83-19, 1983 WL 31248 *2.

18         An impairment, or combination of impairments, equals a listed impairment "only if the medical

19   findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to

20   the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531

21   (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of

22   impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to

23   all the criteria for the one most similar listed impairment.") (emphasis in original).  However, "symptoms

24   alone" will not justify a finding of equivalence. Id.  The ALJ also "is not required to discuss the combined

25   effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless

26   the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th

27   Cir. 2005).

28         The ALJ need not "state why a claimant failed to satisfy every different section of the listing of

impairments." <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

As noted above, the ALJ found plaintiff's affective (depression) disorder met the criteria of Listing 12.04 from March 31, 2003, through August 16, 2006. Specifically, the ALJ found in relevant part:

> **. . . [T]he severity of the claimant's affective (depression) disorder met the criteria of Section 12.04(A)(1) and (B) of 20 CFR Part 404, Subpart P, Appendix 1 . . . The claimant met the criteria of Section 12.04(A)(1) with a documented depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with weight gain, sleep disturbance, decreased energy, feelings of guilt, and difficulty concentrating or thinking. The claimant met the "B" criteria with marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace. The claimant had moderate restriction of activities of daily living. The evidence reflects no episodes of work decompensation or the presence of the "C" criteria during the aforementioned period.**

Tr. 30 (emphasis in original). The ALJ further found that beginning on August 16, 2006, she no longer had an impairment that met or equaled any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 33. Plaintiff argues the medical evidence from Dr. Bremer and Ms. Nelson and her own testimony and self-reports support a finding that she continued to meet or equal the "B" criteria of Listing 12.04, in that her bipolar disorder caused marked limitations in her ability to maintain social functioning and in her ability to maintain concentration, persistence or pace.[5] The undersigned disagrees.

---

[5]Listing 12.04 reads in relevant part:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

First, neither Dr. Bremer nor Ms. Nelson diagnosed plaintiff with a bipolar disorder, nor does the record contain any such diagnosis for the period beginning on August 16, 2006. In addition, nothing in the medical evidence provided by Dr. Bremer and Ms. Nelson support plaintiff's assertion that she continued to have a marked limitation in the areas of both social functioning and concentration, persistence or pace. It is true that, as noted above, Dr. Bremer found plaintiff to be markedly limited in one social functioning task category, but this one area alone does not necessarily mean she was markedly limited in all such social functioning task categories. Indeed, Dr. Bremer found her at most only moderately limited therein, with at most only slight limitations in the area of concentration, persistence or pace. Tr. 281, 283.

For her part, furthermore, Ms. Nelson gave no specific opinion regarding plaintiff's work-related limitations. See Tr. 365-69, 376-78. Again, to the extent Ms. Nelson noted what plaintiff told her in regard

a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

to tiredness, lethargy and sleep disturbance, any such notation does not constitute either a diagnosis or express medical findings. In any event, those mere reports of tiredness, lethargy and sleep disturbance do not give any indication that plaintiff actually was markedly limited in the areas of social functioning and concentration, persistence or pace, let alone that Ms. Nelson believed she was. Finally, because objective medical evidence solely is used at step three of the sequential disability determination process, plaintiff's own testimony and self-reports regarding her symptoms and complaints may not be relied on to show she meets or equals a listed impairment.

Plaintiff next argues that in the alternative, the above evidence shows that she met or equaled the "C" criteria of Listing 12.04.[6] Specifically, plaintiff asserts such evidence establishes that she has had "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause" her "to decompensate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C)(2). But, once more, nothing in the medical evidence provided by Dr. Bremer or Ms. Nelson indicates that they believed her to be so impaired, and the testimony and self-reports of plaintiff alone are insufficient to establish listing-level criteria here. In addition, plaintiff points to no other medical evidence in the record, nor does there appear to be any, to support a finding that her mental impairments met the criteria of Listing 12.04(C)(2). Accordingly, the undersigned finds no error on the part of the ALJ at this step of the sequential disability evaluation process.

IV.    The ALJ Erred in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749

---

[6]Listing 12.04C reads:

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

With respect to plaintiff's credibility in this case, the ALJ found in relevant part as follows:

From March 31, 2003, the alleged onset date, through August 15, 2006, the claimant's statements concerning the limiting effects of her symptoms are generally credible.

. . .

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible beginning on August 16, 2006.

As previously discussed in detail, the claimant no longer has a severe mental impairment (depression) as of August 16, 2006. The objective medical evidence does not support a physical impairment with resultant limitations that preclude the claimant's residual functional capacity determined or provide a basis for a disabling impairment. Further, the claimant's daily activities, as previously referenced, are not consistent with a disabling impairment. The claimant's residual functional capacity as determined is consistent with the opinion of Coral Hilby, M.D., a reviewing state agency physician . . . Significant weight is given to this opinion. Further, based on a consultative physical examination on May 5, 2004, as previously referenced, Dr. [Mark] Heilbrunn[, M.D.,]

opined that the claimant could lift/carry a maximum of 30 pounds with each hand and sit/stand or walk for six hours in an eight-hour workday, which also reflects a residual functional capacity to perform work at the light exertional level . . . The claimant reported that she was able to lift/carry 30 pounds on a frequent basis . . . Significant weight is given to Dr. Heilbrunn's opinion . . .

During the consultative physical examination by Dr. Heilbrunn on May 5, 2004, the claimant did not appear to be in acute distress. She had no limitations with sitting, standing, or walking. She was able to complete all ranges of motion and get on and off the examination table without difficulty. She did not appear fatigued . . .

The record reflects no side-effects from medications that would preclude substantial gainful activity.

Tr. 31, 33-34. Plaintiff argues these are not valid reasons for discounting her credibility. The undersigned agrees. First, as noted by plaintiff and discussed above, the ALJ incorrectly found she no longer had a severe mental impairment as of August 16, 2006, as the medical evidence in the record from Dr. Bremer indicates she continued to have limitations in social functioning which caused more than a minimal effect on her ability to perform work-related activities.

The undersigned also agrees with plaintiff that the evidence of her activities of daily living in the record are insufficient to discount her credibility. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

With respect to activities of daily living, the ALJ noted the following:

. . . During the consultative psychological evaluation by Dr. Bremer on September 26, 2006, . . . the claimant reported that she was raising her two special-needs daughters and maintaining a household as a single parent. The claimant reported that she performed housework, cooked, did laundry, ran errands, and shopped. She had recently had a garden at a community garden plot . . .

Tr. 32. The ALJ, however, did not provide a complete summary of Dr. Bremer's description of plaintiff's self-report regarding her activities of daily living, which reads in relevant part:

When asked how she passes her time, she said she gets her children ready for school, and then does some housework. She lays back down, runs errands, and shops when necessary. She added, "But I get distracted if I take both my kids somewhere together. It makes it hard for me to make decisions." She cooks and does laundry. She added, "But I can't sit still long enough to sew. I had a garden this year, at the community garden plot. That's been good."

> When asked to identify her "biggest problem" she replied: "Not being able to work and to keep up with housework. I feel my children need more from me than I can give them. I don't have enough energy for example to advocate for them for what they need at school. . .

Tr. 380. This shows that while plaintiff has been responsible for raising her children and has engaged in housework and other chores to some extent, she is more limited in doing so than the ALJ made it seem. Plaintiff's own testimony further fails to show plaintiff spends a substantial part of her day performing such tasks to the extent indicative of an ability to perform full-time work. See Tr. 412-15, 437. As such, the undersigned finds this is not a valid reason for discounting plaintiff's credibility.

As noted above, the ALJ also found that the medical evidence in the record concerning plaintiff's physical impairments was not inconsistent with an ability to perform light exertional work. But plaintiff primarily has alleged disability based on her mental impairments. Thus, while the ALJ may not have erred here in so finding, and plaintiff does not expressly challenge that finding, it has little bearing on the other reasons the ALJ provided for discounting plaintiff's credibility regarding her mental functioning, which as discussed above were improper. Accordingly, the undersigned finds the ALJ failed to properly discount plaintiff's credibility in this case.

V.      The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ found that beginning on August 16, 2006, plaintiff "had the residual functional capacity to perform the full range of work at the light exertional level." Tr. 33. Plaintiff argues the ALJ erred in failing to consider all of her functional limitations caused by her impairments. The undersigned agrees. Because, as discussed above, the ALJ erred in evaluating the findings of Dr. Bremer regarding plaintiff's limitations in the area of social functioning, and in discounting plaintiff's credibility with respect to her testimony and self-reports concerning her mental impairments, it cannot be said that the residual functional capacity with which the ALJ assessed plaintiff encompasses all of her mental functional limitations.

The undersigned also agrees that the ALJ erred in failing to fully consider the effects of plaintiff's hepatitis C and hypothyroidism on her ability to work. Plaintiff points to the opinion of Coral Hilby, M.D., a non-examining consulting physician, in which she asserts Dr. Hilby found her to be limited to sedentary work due to hepatitis C and hypothyroidism, as well as to obesity. Tr. 249-54. Dr. Hilby did limit plaintiff to standing and/or walking for no more than two hours in an eight-hour workday. Tr. 250. The lifting restrictions she imposed, however, were more in line with those of light work.[7] Id. Further, as pointed out by the ALJ, just a few months earlier, Mark Heilbrunn, M.D., an examining physician, noted limitations that were more similar to those of one capable of performing light work. Tr. 199. The ALJ though did not adequately explain why he choose to adopt limitations more in line with an ability to perform a full range of light work, rather than the more limited findings of Dr. Hilby. This failure was error which requires re-consideration on remand.

---

[7]Sedentary work is defined in the Social Security Regulations as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a), § 416.967. Light work, in turn, is defined as involving:

. . . [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); see also Social Security Ruling ("SSR") 83-10 (full range of light work requires standing or walking, off and on, for total of approximately 6 hours of 8-hour workday).

In addition, the undersigned agrees as well that the ALJ erred in finding that the record necessarily reflected "no side-effects from medications that would preclude substantial gainful activity." Tr. 34. First, as noted by plaintiff, this is the wrong standard to use in assessing a claimant's residual functional capacity, as the ALJ is required to consider "*all* of the relevant evidence in the case record," including "side effects of medication." <u>See</u> SSR 96-8p, 1996 WL 374184 *5 (emphasis in original). Second, plaintiff reported to Ms. Nelson and testified at the second hearing that she had experienced tiredness and lethargy due to her medications. <u>See</u> Tr. 376, 437. The ALJ has a duty to consider this evidence and determine what effect, if any, it had on plaintiff's residual functional capacity. His failure to do so was error.

## VI.   The ALJ Erred in Finding Plaintiff Capable of Returning to Her Past Relevant Work

Plaintiff has the burden at step four of the disability evaluation process to show that she is unable to return to her past relevant work. <u>Tackett</u>, 180 F.3d at 1098-99. The ALJ found that in light of the physical residual functional capacity with which he assessed plaintiff – that she is capable of performing work at the light exertional level – and the testimony of the vocational expert that plaintiff's past relevant work as a short-order cook is classified as light work, plaintiff could return to that job beginning on August 16, 2006. Tr. 34, 422. Plaintiff argues this finding cannot stand because of the ALJ's errors in assessing her residual functional capacity. The undersigned agrees.

Because it is not clear, as discussed above, that the residual functional capacity with which the ALJ assessed plaintiff encompasses all of her limitations, it also is not clear that she would be able to perform her past job as a short-order cook. In particular, to the extent that on remand plaintiff is found to have mental functional limitations due to her depression and additional physical limitations due to her hepatitis C and hypothyroidism, further vocational expert testimony should be obtained to determine the impact, if any, of those limitations on plaintiff's ability to return to her past relevant work.

## VII.   Step Five of the Sequential Disability Evaluation Process

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. <u>Tackett</u>, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-

Vocational Guidelines (the "Grids"). <u>Tackett</u>, 180 F.3d at 1100-1101; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2000). The Grids may be used if they "*completely and accurately* represent a claimant's limitations." <u>Tackett</u>, 180 F.3d at 1101 (emphasis in original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." <u>Id.</u> (emphasis in original). If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate.[8] <u>Ostenbrock</u>, 240 F.3d at 1162; <u>Tackett</u>, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

In addition to finding plaintiff capable of returning to her past relevant work as a short-order cook, the ALJ also found that beginning on August 16, 2006:

> As an alternative finding, based on the claimant's age, education, past relevant work experience and residual functional capacity as determined, Medical-Vocational Rule 202.21 directs a finding of "not disabled." The claimant is considered a younger individual at age 45, and she has a high school education. . . . [T]he vocational expert at the initial hearing on May 12, 2006, testified that the claimant's past relevant work was semi-skilled with no transferable skills. The undersigned concurs with the vocational expert.

Tr. 34. Plaintiff argues that because she has mental impairments which cause significant non-exertional limitations, the ALJ could not rely on the Grids to find her disabled, but was required to base his step five determination on testimony obtained from the vocational expert. Instead, as pointed out by plaintiff, the ALJ failed to pose any hypothetical question to the vocational expert, let alone one containing any of the non-exertional limitations caused by her mental impairments. <u>See</u> Tr. 423-24.

The undersigned agrees the ALJ erred here. As discussed above, the ALJ erred in evaluating the opinion of Dr. Bremer regarding plaintiff's limitations in the area of social functioning. Also as discussed above, the ALJ erred in assessing plaintiff's residual functional capacity based in part on those limitations. They include a moderate limitation in her ability to interact appropriately with co-workers, supervisors and the public, and a marked limitation in her ability to respond appropriately to work pressures. Indeed, the ALJ even indicated he agreed at least with the moderate limitations found by Dr. Bremer. The undersigned finds these limitations would have more than a minimal impact on plaintiff's ability to work, and thus they constitute significant non-exertional limitations. As such, the ALJ erred in failing to obtain

---

[8]"Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

the testimony of the vocational expert regarding that impact.

The undersigned disagrees, however, that the ALJ was required to find plaintiff disabled based on the vocational expert's testimony that if a person were to become teary and could not function for a bit on the job more than twice a month, it would be difficult for that person to sustain employment. See Tr. 426-27. It is not at all clear that the record supports such a limitation. While it is true that, as discussed above, the ALJ failed to provide valid reasons for discounting plaintiff's credibility, none of the objective medical evidence in the record provides any indication that she is so limited. Nevertheless, if on remand plaintiff is found to be credible, or the objective medical evidence is determined to support that limitation, then the Commissioner also shall determine if plaintiff should be found disabled based on the vocational expert's testimony regarding this issue.

## VIII.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the objective medical evidence in the record regarding plaintiff's mental impairments, plaintiff's credibility, plaintiff's residual functional capacity, and plaintiff's ability to perform her past relevant work and other work existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a

treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116. As discussed above, while the ALJ did err in evaluating the findings of Dr. Bremer, the record fails to definitively show those findings establish plaintiff is disabled based on that evidence.

It also is true the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). The Court of Appeals in Connett went on to state, however, it was "not convinced" the "crediting as true" rule was mandatory. Id. Thus, at least where findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears the courts "have some flexibility in applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (applying "crediting as true" rule, but noting its contrary holding in Connett).[9] Once more, because the medical evidence in the record does not definitively establish plaintiff's suffers from disabling limitations, remand for further administrative proceedings is appropriate here.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written

---

[9]In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. Benecke, 379 F.3d at 594. The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id. It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96.

objections thereto. <u>See also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 5, 2008**, as noted in the caption.

DATED this 7th day of November, 2008.


Karen L. Strombom
United States Magistrate Judge